**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| DVORKIN HOLDINGS, LLC, | ) | |
| | ) | |
| Debtor. | ) | Case No. 15-cv-6074 |
| ———————————————— | ) | |
| | ) | Judge Robert M. Dow, Jr. |
| COLFIN BULLS FUNDINGS A, LLC, | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | On appeal from the U.S. Bankruptcy Court |
| v. | ) | for the Northern District of Illinois, |
| | ) | Eastern Division |
| GUS A. PALOIAN, not individually or | ) | |
| personally but solely in his capacity as the | ) | Bankr. Case No. 12-31336 (JPC) |
| Chapter 11 Trustee of Debtor's Estate, | ) | |
| AARON DVORKIN, BEVERLY | ) | Judge Jacqueline P. Cox |
| DVORKIN, and FRANCINE DVORKIN, | ) | |
| | ) | |
| Appellees. | ) | |

## MEMORANDUM OPINION AND ORDER

This case is on appeal from the United States Bankruptcy Court for the Northern District

of Illinois, Eastern Division, Case No. 12-31336 (JPC). On July 10, 2015, the Bankruptcy Court

entered an order ("Order") confirming the amended joint Chapter 11 plan of reorganization for

Dvorkin Holdings, LLC ("Debtor"), which was proposed by Gus A. Paloian, not individually or

personally but solely in his capacity as the Chapter 11 Trustee (the "Trustee") and Aaron

Dvorkin, Beverly Dvorkin, and Francine Dvorkin (collectively, the "Equity Interest Holders").

Before the Court is the appeal of Colfin Bulls Fundings A, LLC ("Creditor") from the

Bankruptcy Court's Order.[1] For the reasons set forth below, the Bankruptcy Court's decision is

reversed in part. This matter is remanded to the Bankruptcy Court to: (1) determine the

---

[1] This Court also has pending before it a related appeal, Case No. 15-cv-10512. As set out below (see pp. 29-30, *infra*), the Court requests that the parties file in that docket no later than April 15, 2016 a statement of their position in regard to whether that appeal is moot in light of this opinion.

appropriate rate of postpetition interest to award Creditor in light of this opinion, Creditor's contracts, and any relevant equitable considerations; (2) determine whether Creditor's amended proof of claim is timely under Section 6.4 of the Plan and, if it is not, address and resolve Creditor's arguments concerning why its amended proof of claim should nonetheless be accepted; and (3) make a distribution of funds in the appropriate amount to Creditor.

## I.     Background

On August 7, 2012, Debtor filed a petition under Chapter 11 of the Bankruptcy Code, 11 U.S.C. §§ 101 *et seq.*  Debtor was and is involved in real estate investment and management through its affiliates and related entities.  The Equity Interest Holders indirectly own the membership interests in Debtor.

The United States Trustee filed a motion requesting that the Bankruptcy Court appoint a Chapter 11 Trustee.  See N.D. Ill. Bankr. Case No. 12-31336, Docket Entry 29.  The United States Trustee explained that Debtor's management was unable to fulfill the fiduciary duties owed to Debtor's creditors following the indictment of Daniel Dvorkin—who played an important role in Debtor's management—in a plot to solicit the murder of one of its creditors. See *id.* at 5-6.  See also *United States v. Dvorkin*, 799 F.3d 867 (7th Cir. 2015) (affirming Daniel Dvorkin's conviction for using or causing another person to use a facility of interstate commerce with intent to commit murder for hire and soliciting another to commit a crime of violence).  On October 16, 2012, the Bankruptcy Court granted the United States Trustee's Motion and appointed Mr. Paloian the Chapter 11 Trustee.  See N.D. Ill. Bankr. Case No. 12-31336, Docket Entry 96.

On November 15, 2012, Creditor filed a proof of claim (the "Original Proof of Claim") with the Bankruptcy Court in the total amount of $3,504,767.25, exclusive of costs, expenses, and attorneys' fees.  Creditor's claim evidences debt acquired by Creditor from MB Financial

Bank, N.A. ("MB Financial") for one or more loans that MB Financial made to Debtor or its affiliates. Creditor reserved its right to amend and supplement its Original Proof of Claim to add any additional claims it may have against Debtor. On December 20, 2012, the Bankruptcy Court sent a notice to all creditors informing them that February 27, 2013 was the deadline to file proofs of claim against the Estate (the "Bar Date"). Overall, creditors filed nearly $65,000,000 in claims against Debtor's bankruptcy estate. On February 25, 2015, the Trustee filed a limited objection to Creditor's Proof of Claim, to which Creditor responded on March 26, 2015.

On March 31, 2015, the Trustee and the Equity Interest Holders (collectively, the "Plan Proponents") filed a Joint Chapter 11 Plan of Reorganization (the "Plan," [14-1] at 1-26) and a disclosure statement concerning the Plan ("Disclosure Statement," [14-4] at 78-106). The Plan proposed to pay general unsecured claims (Class Two) in full, plus interest accruing after the Petition Date at the "Legal Rate." [14-1] at 13. In the Disclosure Statement, "Plan Proponents assert [that the Legal Rate] is the federal judgment rate, or 0.17%." [14-4] at 93. The Plan further provided that the Equity Interest Holders (Class 3) would retain their interests in Debtor. [14-1] at 13. Finally, the Plan provided for the disallowance of improperly filed claims. Specifically, Section 6.4 of the Plan provided: "Subject to Bankruptcy Code section 502(j) and Bankruptcy Rules 3008 and 9006, any Claim for which the filing of a Proof of Claim, application or motion with the Bankruptcy Court is required under the terms of the Bankruptcy Code, the Bankruptcy Rules, any order of the Bankruptcy Court (including one providing for a Bar Date) or the Amended Joint Plan will be disallowed for distribution purposes if and to the extent that such Proof of Claim (or other filing) is not timely and properly made."' [14-1] at 17.

Creditor objected to the Plan's proposed payment of postpetition interest to holders of general unsecured claims at the Legal Rate. Creditor proposed that, instead of the Legal Rate,

the Plan should pay postpetition interest at the postpetition regular and default interest rates set forth in its applicable promissory notes (the "Contract Rate").

On May 7, 2015, the Bankruptcy Court granted the Trustee's motion for an order approving the adequacy of the Plan Proponents' Disclosure Statement. [14-3] at 14-18. The court recognized that the Trustee had recovered many millions of dollars for the Estate and its creditors, resulting in a surplus estate with more liquidated assets than scheduled claims. *Id.* at 15. The court explained that "[n]o voting will occur under" the Plan because "each class is unimpaired by the plan." *Id.* (citing *In re PPI Enterprises (U.S.), Inc.*, 324 F.3d 197, 203 (3d Cir. 2003)). The court recognized that the Plan "proposes to pay claim holders 100% with interest at the rate of 0.17%, the federal judgment rate and to permit Interest Holders to retain their Interests in the Debtor." *Id.*

The court rejected the competing plan offered by creditors—which "propose[d] to pay claim holders interest at the contracts' default rate" —on the basis that it "ignores the 11 U.S.C. § 502(b)(2) prohibition on the payment of unmatured postpetition interest." [14-3] at 15. According to the court, "[s]ection 502(b)(2) provides that a claim is disallowed to the extent that 'such claim is for unmatured interest,'" and therefore "'prohibits payment of postpetition interest on prepetition unsecured claims, including claims for prepetition taxes.'" [14-3] at 15-16 (quoting 4 COLLIER ON BANKRUPTCY ¶ 502.03[3][a] (16th ed.)). The Bankruptcy Court also determined that *In re Chicago, Milwaukee, St. Paul & Pacific Railroad Co.*, 791 F.2d 524, 530 (7th Cir. 1986)—which observed that "when the debtor is solvent the judicial task is to give each creditor the measure of his contractual claim, no more and no less"—was not applicable because "that case was decided almost 30 years ago under the Bankruptcy Act," not the Bankruptcy

Code. [14-3] at 16.[2]  Instead, the court concluded that section 726(a)(5) of the Code applied, requiring the payment of postpetition interest at "the legal rate."  *Id.*  Citing the Ninth Circuit's decision in *In re Cardelucci*, 285 F.3d 1231, 1234 (9th Cir. 2002), the court explained that "the legal rate" meant the Federal Judgment Rate set forth in 28 U.S.C. § 1961(a).  [14-3] at 17.  Finally, the court found that the "absolute priority rule" codified in section 1129(b) of the Code did not require it to award postpetition interest at the Contract Rate, because "[t]he absolute priority rule is not implicated herein where all claims will be paid in full."  *Id.* at 18 (citing 11 U.S.C. § 1129(b)).

On May 29, 2015, Creditor filed an amended proof of claim (the "Amended Proof of Claim").  The Amended Proof of Claim added "a claim for post-petition regular and default interest" at the Contract Rate.  [13] at 15.  Neither the Trustee nor any other party objected to the Amended Proof of Claim on the ground that it was filed after the Bar Date or was otherwise improperly filed under Section 6.4 of the Plan.

On June 12, 2015, Creditor filed an objection to confirmation of the Plan.  Specifically, Creditor: (1) restated its objection to confirmation of the Plan because it proposed to pay postpetition interest on Creditor's claims at the Legal Rate rather than the Contract Rate; and (2) objected to the Plan's proposed disallowance of late-filed claims for distribution purposes.  The Plan Proponents responded to Creditor's objection on June 23, 2015.  On June 26, 2015, the Plan Proponents filed an amendment to the Plan.

On June 30, 2015, the Bankruptcy Court held a plan confirmation hearing.  Creditor restated its two objections.  The Bankruptcy Court overruled them and confirmed the Plan.  See [1-3].  The Bankruptcy Court overruled Creditor's objection to the postpetition interest rate "for

---

[2] Although *Chicago, Milwaukee* was decided after the Bankruptcy Code was enacted in 1978, it applied pre-Code law because the underlying petition for reorganization was filed in 1977.  See *Chicago, Milwaukee*, 791 F.2d at 525-26.

the reasons stated on the record." *Id.* at 3.  It overruled Creditor's objection to Section 6.4 of the plan: (1) "for the reasons set forth in *In re Xpedior, Inc.*, 354 B.R. 210, 225-27 (Bankr. N.D. Ill. 2006)"; (2) because "disallowance of a claim is not a form of impairment for plan confirmation purposes"; and (3) because "such objection is premature in that the Trustee has not, to date, relied on [Section] 6.4 as a basis for the Estate's objections to [Creditor's] proof of claim (Claim 14-1) or amended proof of claim (Claim No. 14-2)."  [1-3] at 3.

On July 9, 2015, Creditor filed a Notice of Appeal challenging the Confirmation Order. Following confirmation, the Trustee made a distribution to creditors of 100% of all allowed claims, plus postpetition interest at the Federal Judgment Rate.  Creditor's claim is the only claim not fully paid under the Plan, due to Creditor's objections.

Creditor raises the following issues on appeal (see [13] at 12-14):

1.      Whether the Bankruptcy Court erred in entering the Confirmation Order confirming the Plan on the ground that, because the Debtor's Estate is solvent, the Plan fails to provide Lender post-petition interest on its claims at the rates set forth in its contracts with the Debtor.

2.      Whether the Bankruptcy Court erred in entering the Confirmation Order, on the ground that, because the Debtor's Estate is solvent, the rate of post-petition interest provided in the Confirmation Order and in the Plan is improperly low and violates the "best interests of creditors" test of 11 U.S.C. § 1129(a)(7).

3.      Whether the Bankruptcy Court erred in entering the Confirmation Order, and finding that the "legal rate" as provided for in 11 U.S.C. § 726 is the federal interest rate on money judgments in civil cases as provided in 28 U.S.C. § 1961, which as of the Petition Date (defined below) in the Bankruptcy Case provides post-judgment interest at the *de minimis* rate of only approximately 0.17% per annum.

4.      Whether the Bankruptcy Court erred in entering the Confirmation Order, on the ground that, the rate of post-petition interest provided in the Confirmation Order and in the Plan is improperly low and provides an unfair and inequitable windfall to the Equity Interest Holders at the expense of creditors.

5.      Whether the Bankruptcy Court erred in entering the Confirmation Order, on the ground that, the rate of post-petition interest provided in the Confirmation Order and in the Plan is improperly low and violates 11 U.S.C. § 1129(b) to the extent that it is not "fair and equitable" and improperly discriminates against creditors to the benefit of the Equity Interest Holders.

6.        Whether the Bankruptcy Court erred in entering the Confirmation Order, on the ground that, the disallowance of late-filed claims for distribution purposes under Section 6.4 of the Plan violates the "best interests of creditors" test of 11 U.S.C. § 1129(a)(7) and 11 U.S.C. § 726(a)(3).

7.        Whether the Bankruptcy Court erred in entering the Confirmation Order, on the ground that, the disallowance of late-filed claims for distribution purposes under Section 6.4 of the Plan violates 11 U.S.C. §§ 1122(a), 1124 and 1129(a)(1).

8.        Whether the Bankruptcy Court erred in entering the Confirmation Order, on the ground that, the disallowance of late-filed claims for distribution purposes under Section 6.4 of the Plan violates 11 U.S.C. § 1129(b) to the extent it is not "fair and equitable" and improperly discriminates against creditors to the benefit of Equity Interest Holders.

## II.        Standard of Review

"District courts sit as appellate courts when hearing appeals from bankruptcy courts."

*Hijjawi v. Five N. Wabash Condo. Ass'n*, 491 B.R. 876, 880 (N.D. Ill. 2013).  The Bankruptcy

Court's factual findings are scrutinized for clear error, while its legal conclusions are reviewed

*do novo*.  *Kovacs v. United States*, 739 F.3d 1020, 1023 (7th Cir. 2014).  To the extent that the

Bankruptcy Code commits a decision to the discretion of the Bankruptcy Court, that decision is

reviewed for an abuse of discretion.  *Belson v. Olson Rug Co.*, 483 B.R. 660, 664 (N.D. Ill. 2012)

(citing *Wiese v. Cmty. Bank of Cent. Wis.,* 552 F.3d 584, 588 (7th Cir. 2009)).  "In general terms,

a court abuses its discretion when its decision is premised on an incorrect legal principle or a

clearly erroneous factual finding, or when the record contains no evidence on which the court

rationally could have relied."  *In re KMart Corp.*, 381 F.3d 709, 713 (7th Cir. 2004).

## III.        Analysis

Creditor challenges two aspects of the Bankruptcy Court's Confirmation Order.  First,

Creditor argues that the Bankruptcy Court erred by confirming, over its objection, a Plan that

pays its full claim plus interest at the Federal Judgment Rate, rather than the Contract Rate.

According to Creditor, the Code does not mandate the payment of interest at the Federal

Judgment Rate and, where there is a surplus left in a Chapter 11 bankruptcy, the Bankruptcy

Code's "best interests of the creditor" test (11 U.S.C. § 1129(a)(7)) and "fair and equitable" test (11 U.S.C. § 1129(b)) require the Bankruptcy Court to award unsecured creditors postpetition interest at the rates set forth in their contracts with the debtor. The Plan Proponents argue that Creditor waived its right to appeal these issues, because subsections 1129(a)(7) and (b) apply only to claims that are "impaired" by the bankruptcy plan, and Creditor did not challenge the Bankruptcy Court's finding that Class 2 creditors were not impaired by the Plan in its statement of issues to be presented on appeal ("Statement of Issues"). The Plan Proponents also argue that the Bankruptcy Court's Order should be affirmed on its merits.

Second, Creditor argues that the Bankruptcy Court erred by approving over its objection Section 6.4 of the Plan, which bars late claims. The Plan Proponents respond that Creditor was not aggrieved by and therefore lacks standing to appeal this issue because the Plan Proponents did not object to Creditor's Amended Proof of Claim as untimely. Plan Proponents also argue that the Code does not require late-filed claims to be treated as allowed claims under the Plan.

The Court begins its analysis of these issues with a background discussion of the Bankruptcy Code—specifically, its provisions concerning payment of postpetition interest and its requirements for approving a Chapter 11 plan over the objection of creditors (Section III.A). The Court next addressees whether Creditor waived its right to appeal the Bankruptcy Court's finding that Creditor's claims were not impaired under the Plan and, if Creditor did not, whether the Bankruptcy Court's finding of non-impairment was correct (Section III.B). The Court then analyzes whether the Code requires the Bankruptcy Court to award interest to unsecured creditors at the Federal Judgment Rate in cases involving a surplus bankruptcy estate (Section III.C), and whether use of the Federal Judgment Rate in such cases would comply with the

Codes' best interest of creditors test (Section III.D).  Finally, the Court addresses Creditor's challenge to Section 6.4 of the Plan (Section III.E).

### A.    The Bankruptcy Code

The Bankruptcy Reform Act of 1978, which enacted the Bankruptcy Code ("Code"), was "the first major revision of the bankruptcy law in forty years."  *Matter of Smith*, 640 F.2d 888, 889 (7th Cir. 1981).  "The Bankruptcy Code standardize[d] an expansive (and sometimes unruly) area of law."  *RadLAX Gateway Hotel, LLC v. Amalgamated Bank*, 132 S. Ct. 2065, 2073 (2012).

Under the Code, "[a] creditor * * * may file a proof of claim" in a debtor's bankruptcy case.  11 U.S.C. § 501(a).  A party in interest may file an objection to the claim.  *Id.* § 502.  If no objection is filed, the claim is deemed allowed.  *Id.* § 502(a).  If an objection is filed, the Bankruptcy Court must "determine the amount of the claim as of date of the bankruptcy petition, and must allow the claim with respect to that amount, except to the extent that one of nine enumerated grounds for disallowance exist."  *In re The Budd Co., Inc*., 540 B.R. 353, 359 (Bankr. N.D. Ill. 2015) (citing 11 U.S.C. § 502(b)(1)-(9)).  As is relevant here, the Bankruptcy Court "shall allow [the] claim in such amount, *except* to the extent" that "such claim is for unmatured interest."  11 U.S.C. § 502(b)(2) (emphasis added).  "Unmatured interest is 'interest which was not yet due and payable at the time the petition was filed.'"  *In re Doctors Hosp. of Hyde Park, Inc.*, 508 B.R. 697, 706 (Bankr. N.D. Ill. 2014) (quoting *In re X–Cel, Inc.,* 75 B.R. 781, 788–89 (N.D. Ill. 1987)).

The Code allows a Chapter 11 debtor to formulate a plan of reorganization with a proposal for paying creditors' claims.  11 U.S.C. § 1121(a).  The Bankruptcy Court shall confirm the proposed plan if it concludes that the requirements of section 1129 have been met.  *Id.* § 1129.  As is relevant here, subsection 1129(a)(7) requires that, "[w]ith respect to each *impaired*

class of claims or interests—(A) each holder of a claim or interest of such class—(i) has accepted the plan; or (ii) will receive or retain under the plan on account of such claim or interest property of a value, as of the effective date of the plan, that is not less than the amount that such holder would so receive or retain if the debtor were liquidated under chapter 7 of this title on such date[.]" *Id.* § 1129(a)(7)(A) (emphasis added). Section 1129(a)(7) is referred to as the "best interest of creditors" test. The test "applies to individual creditors holding impaired claims, even if the class as a whole votes to accept the plan," and requires the Bankruptcy Court to assess what the creditor would receive in a hypothetical Chapter 7 bankruptcy. *In re Sentinel Mgmt. Grp., Inc.*, 398 B.R. 281, 310 (Bankr. N.D. Ill. 2008) (citations omitted).

In a Chapter 7 bankruptcy, fifth priority in the distribution of the bankruptcy estate is given to "payment of interest at the legal rate from the date of the filing of the petition, on any claim paid under paragraph (1), (2), (3), or (4) of * * * subsection [726(a)]." 11 U.S.C. § 726(a)(5). The Seventh Circuit has construed subsection 726(a)(5) to be an exception to section 501(b)(2)'s prohibition on unmatured interest, which applies "when the debtor turns out to be solvent." *In re Fesco Plastics Corp., Inc.*, 996 F.2d 152, 155-56 (7th Cir. 1993) (citing *United States v. Ron Pair Enterprises, Inc.*, 489 U.S. 235, 246 (1989); *Vanston Bondholders Protective Comm. v. Green*, 329 U.S. 156, 164 (1946)). Sixth and last priority in a Chapter 7 case is "the debtor." 11 U.S.C. § 726(a)(6).

Subsection 1129(a)(8) of the Code further requires that, "[w]ith respect to each class of claims or interests—(A) such class has accepted the plan; or (B) such class is not impaired under the plan." 11 U.S.C. § 1129(a)(8). If a class has not accepted the plan and is impaired under the plan, the Bankruptcy Court may nonetheless approve the plan in a "cramdown" under subsection 1129(b), which provides in relevant part:

(b)(1) Notwithstanding section 510(a) of this title, if all of the applicable requirements of subsection (a) of this section other than paragraph (8) are met with respect to a plan, the court, on request of the proponent of the plan, shall confirm the plan notwithstanding the requirements of such paragraph if the plan does not discriminate unfairly, and is fair and equitable, with respect to each class of claims or interests that is *impaired* under, and has not accepted, the plan.

(2) For the purpose of this subsection, the condition that a plan be fair and equitable with respect to a class includes the following requirements:

* * *

(B) With respect to a class of unsecured claims--

(i) the plan provides that each holder of a claim of such class receive or retain on account of such claim property of a value, as of the effective date of the plan, equal to the allowed amount of such claim; or

(ii) the holder of any claim or interest that is junior to the claims of such class will not receive or retain under the plan on account of such junior claim or interest any property[.] * * *

11 U.S.C. § 1129(b) (emphasis added).

Section 1129(b) is referred to as the "fair and equitable" test. "The absolute priority rule is one of the conditions of the 'fair and equitable' standard necessary for cram down." *Sentinel*, 398 B.R. at 320. Under the absolute priority rule, "a dissenting class of unsecured creditors must be provided for in full before any junior classes can receive or retain any property under a reorganization plan." *Norwest Bank Worthington v. Ahlers,* 485 U.S. 197, 202 (1988) (citations omitted). The absolute priority rule "had its genesis in judicial construction of the undefined requirement of the early bankruptcy statute that reorganization plans be 'fair and equitable.'" *Id.*

## B.    Impairment

### 1.    Waiver

Plan Proponents argue that Creditor waived its right to appeal the Bankruptcy Court's finding that its claim was not impaired under the Plan by failing to list that specific issue in its Statement of Issues. Creditor responds that the issue of impairment is properly before the Court because it "may be reasonably inferred from the Statement of Issues," given that Creditor

"argued before the Bankruptcy Court that the Plan improperly impaired their claims due to its failure to pay post-petition interest at the Contract Rate." [26] at 8.

Bankruptcy Rule 8009 requires the appellant to "file with the bankruptcy clerk and serve on the appellee * * * a statement of the issues to be presented." Fed. R. Bankr. P. 8009(a)(1)(A). Creditor's alleged failure to comply with this rule "does not affect the validity of the appeal." Fed. R. Bankr. P. 8003(a)(2) (only the failure to timely file a notice of appeal affects the validity of an appeal). But it is a ground "for the district court * * * to act as it considers appropriate, including dismissing the appeal." *Id.*

Exercising its discretion, the Court will not dismiss Creditor's appeal based on Creditor's alleged failure to comply with Rule 8009(a)(1)(A). There is no indication that the Plan Proponents have suffered any undue prejudice or surprise. The parties argued the impairment issue before the Bankruptcy Court and have had an opportunity to thoroughly brief the issue here. See *Yoon v. VanCleef*, 498 B.R. 864, 866 (N.D. Ind. 2013) (on appeal, district court would decline to strike appellee's brief based on list of alleged defects, including making arguments for the first time on appeal, where issue under appeal was strictly one of statutory construction, which was addressed at length by parties before bankruptcy court). Plan Proponents argue that Creditor "strategically chose not to appeal" from the Bankruptcy Court's determination that Creditor was not impaired under the Plan. [24] at 27. However, they do not identify any strategic advantage that Creditor gained or sought to gain by not bringing up the issue earlier. Instead, Creditor's omission, if it is accurately called one, appears to have been inadvertent.

Moreover, while Creditor did not specifically challenge the Bankruptcy Court's determination that its claim is not impaired under the Plan, this issue may reasonably be inferred from Creditor's five specific challenges to the Bankruptcy Court's approval, over its objection,

of a Plan that awards Creditor 100% of its claim plus postpetition interest at the Federal Judgment Rate. See [13] at 12-13. See also *In re Am. Cartage, Inc.*, 656 F.3d 82, 91 (1st Cir. 2011) ("An issue that is not specifically enumerated [in the statement of issues to be presented under Bankruptcy Rule 8006] may be deemed preserved if the substance of the issue reasonably can be inferred from an issue or issues that are listed."). As discussed below, the issues of impairment and compliance with the Code's "best interest of creditors" and "fair and equitable" tests are intertwined. Essentially, the Bankruptcy Court approved the Plan over Creditor's objection because it found that the Plan gave Creditor all the postpetition interest it was due under the Code and, therefore, was unimpaired. The Court must examine what Creditor is entitled to under the Code before it can determine if Creditor's claim is impaired under the Plan.

### 2. Merits

The Court now turns to the merits of Plan Proponents' argument that the Bankruptcy Court properly found that Creditor's claim was not "impaired" under the Plan. By their express terms, section 1129(a)(7)'s best interest of creditors test and section 1129(b)'s fair and equitable requirement apply only to classes of claims or interests that are "impaired." Section 1124 provides that "a class of claims or interests is impaired under a plan unless, with respect to each claim or interest of such class," the plan: "(1) leaves unaltered the legal, equitable, and contractual rights to which such claim or interest entitles the holder of such claim or interest," or (2) meets certain requirements in cases involving "any contractual provision or applicable law that entitles the holder of such claim or interest to demand or receive accelerated payment of such claim or interest after the occurrence of a default." 11 U.S.C. § 1124. This appeal involves section 1124(a)(1), and therefore the question is whether the Plan "leaves unaltered the legal, equitable, and contractual rights" to which Creditor's claim entitles it.

The Bankruptcy Court relied on the Third Circuit's decision in *PPI* to conclude that Creditor was not impaired under the Plan because it will receive 100% of its claim plus postpetition interest at the Federal Judgment Rate. 324 F.3d at 203. *PPI* involved section 502(b)(6), which caps the amount the Bankruptcy Court may allow on "claim[s] of a lessor for damages resulting from the termination of a lease of real property." 11 U.S.C. § 502(b)(6). The Third Circuit found that a lessor's claim for such damages was not "impaired" under section 1124(1) even though, through application of section 502(b)(6)'s cap, the creditor "might have received considerably more if he had recovered on his leasehold claims before PPIE filed for bankruptcy." *PPI*, 324 F.3d at 205. The court distinguished between impairment caused by statute and impairment caused by the bankruptcy plan. It explained that the creditor was "only entitled to his 'legal equitable, and contractual rights,' as they now exist." *Id.* "Because the Bankruptcy Code, not the Plan, is the only source of limitation on those rights here," the Third Circuit concluded, the Creditor's "claim is not impaired under § 1124(1)." *Id.*

Here, Creditor's rights are "impaired" because its underlying contracts entitle it to interest at one rate and the Plan awards Creditor interest at a lower rate—namely, the Federal Judgment Rate. Under *PPI*, the Court must determine whether this impairment is a result of the application of the Code or the Plan. If the Code—rather than just the Plan—limits interest to the Federal Judgment Rate, then Creditor's claim is not impaired under section 1124(1).

*PPI* recognizes that an unsecured claim is impaired if postpetition interest is not paid, but does not answer the question whether postpetition interest is limited to the Federal Judgment Rate. The issue of postpetition interest came up in *PPI* because the lessor argued that the legislative history of section 1124 showed that Congress intended to "provid[e] creditors with voting rights if a bankruptcy plan alters their nonbankruptcy rights in *any* manner"—in the

lessor's case, by disallowing part of his claim through application of section 502(b)(6)'s cap. *PPI*, 324 F.3d at 206 (emphasis added). Prior to a 1994 amendment, section 1124 contained a third subsection, subsection 1124(3), which provided that a class of claims or interests is impaired under a plan unless, with respect to each claim or interest of such class, the plan "provides that, on the effective date of the plan, the holder of such claim or interest receives, on account of such claim or interest, cash equal to—(A) with respect to a claim, the allowed amount of such claim * * *." 11 U.S.C. § 1124(3) (repealed). In 1994, the bankruptcy court in New Jersey held that section 1124(3) allowed a solvent debtor to pay the "allowed" claims of unsecured creditors in full, excluding postpetition interest, without such claims being considered "impaired." *In re New Valley Corp.*, 168 B.R. 73, 77–80 (Bankr. D.N.J. 1994).[3] "The *New Valley* court held that a portion of a creditor's claim that was not 'allowed' under the Bankruptcy Code need not be paid after a bankruptcy filing, even if the claim would be recoverable in a non-bankruptcy context." *PPI*, 324 F.3d at 205 (citing *New Valley*, 168 B.R. at 77-80).

As *PPI* discusses, Congress repealed subsection 1124(3) in response to *New Valley*. See H.R. REP. 103-835, at 47-48 (1994), *as reprinted in* 1994 U.S.C.C.A.N. 3340, 3356-57 ("Committee Report"). See also *PPI*, 324 F.3d at 206. In its report recommending repeal, the House Judiciary Committee ("Committee") explained that "[t]he *New Valley* decision applied section 1124(3) of the Bankruptcy Code literally by asserting, in a decision granting a declaratory judgment, that a class that is paid the allowed amount of its claims in cash on the effective date of a plan is unimpaired under section 1124(3), therefore is not entitled to vote, and is not entitled to receive postpetition interest." Committee Report, 1994 U.S.C.C.A.N. at 3356.

---

[3] The *New Valley* court recognized, nonetheless, that "the good faith requirement of Bankruptcy Code section 1129(a)(3) may independently require that postpetition interest be paid." *New Valley*, 168 B.R. at 80.

The Committee opined that this was an "unfair result" and found "it appropriate to delete section 1124(3) from the Bankruptcy Code." *Id.* "As a result of this change," the Committee explained, "if a plan proposed to pay a class of claims in cash in the full allowed amount of the claims," without postpetition interest, "the class would be impaired, entitling creditors to vote for or against the plan of reorganization." *Id.* at 3356-57 (emphasis added). Based on this legislative history, *PPI* concluded that the "'principal change' in the repeal 'relates to the award of post petition interest'" only and rejected the lessee's argument that "Congress 'went beyond' the New Valley 'problem' [by] providing creditors with voting rights if a bankruptcy plan alters their nonbankruptcy rights in any manner." 324 F.3d at 206-07.

In sum, *PPI* recognizes that a creditor is impaired under a plan that does not award post-petition interest, but does not address what rate of postpetition interest a bankruptcy court should apply. Therefore, the Court must consider the merits of Creditor's argument that it is entitled to interest at the Contract rate before it can decide whether Creditor is impaired by the Plan. This leads the Court to the next issue on appeal: whether the Plan's payment of postpetition interest at the Federal Judgment Rate is consistent with the Code's express provisions concerning the award of postpetition interest, sections 502(b)(2) and 726(a)(5).

### C.    Sections 502(b)(2) and 726(a)(5)

The Bankruptcy Court held that Creditor was unimpaired under the Plan, and therefore that subsections 1129(a)(7) and 1129(b) were inapplicable, because: (1) section 726(a)(5) of the Code requires the payment of interest "at the legal rate"; and (2) the "legal rate" means the Federal Judgment Rate. [14-3] at 17. The Court agrees that section 726(a)(5) requires the payment of postpetition interest to unsecured creditors in Chapter 11 bankruptcy cases, but is not convinced that the "legal rate" is limited to the Federal Judgment Rate when the bankruptcy

estate turns out to be solvent, which is the case here. Instead, the Court concludes that there is a presumption that, in a surplus Chapter 11 case, creditors who have contracts with the debtor will receive postpetition interest pursuant to the terms of their contracts. This presumption may be rebutted based on equitable considerations.

In *Fesco Plastics*, the Seventh Circuit explained that the "age-old rule in bankruptcy, adopted from the English system, is that interest on claims stops accruing when the bankruptcy petition is filed." 996 F.2d at 155. But "[t]wo major exceptions to the rule have developed over time." *Id.* The first, which is the one relevant here, is that post-petition interest is allowed "when the debtor turns out to be solvent." *Id.* (citing *Ron Pair*, 489 U.S. at 246; *Vanston*, 329 U.S. at 164). "The second exception allows post-petition interest for secured creditors whose security is worth more than the sum of the principal and all interest due." *Id.* at 156. These are the only two "equitable exception[s] to the general rule of § 502(b)(2)" because "[i]f Congress had intended to recognize other exceptions it would have put them in the Code as well." *Id.* According to the Seventh Circuit, the general rule stopping the accrual of interest "has been written into the Bankruptcy Code at 11 U.S.C. § 502(b)(2)," and the exception for solvent estates "is included in the Bankruptcy Code at 11 U.S.C. § 726(a)(5)." *Id.* at 155-56.

Section 726(a)(5), which governs Chapter 7 proceedings, is applicable to a Chapter 11 proceeding via operation of section 1129(a)(7)'s best interest of creditors test. See *In re Coram Healthcare Corp.*, 315 B.R. 321, 344 (Bankr. D. Del. 2004) ("[I]n a chapter 7 liquidation case, where a debtor is solvent, a creditor is entitled to receive, as a fifth priority claim, post-petition interest. Creditors must receive at least as much under a chapter 11 plan of reorganization as they would in a liquidation under chapter 7."); see also Judith Elkin, *A Primer on Interest Rates on Bankruptcy Cases*, 042805 AM. BANKR. INST. 15, § IV (2005). Section 726(a)(5) requires the

estate to pay unsecured creditors "interest at the legal rate" on their claims before the estate may distribute any remaining proceedings to the debtor. 11 U.S.C. § 726(a)(5), (6).

However, the Code does not define "interest at the legal rate" and neither the Supreme Court, the Seventh Circuit, nor the district courts in this Circuit have interpreted the term.[4] According to some legal scholars, "[a] controversy is brewing, both in the courts and among legal commentators, regarding the proper rate of interest payable to holders of general unsecured claims in so-called 'solvent debtor' cases." Scott C. Shelley & Solomon J. Noh, *Show Me The Money: Another Look At Post-Petition Interest In Solvent Debtor Chapter 11 Cases*, 24 EMORY BANKR. DEV. J. 361, 361 (2008); see also 4 COLLIER ON BANKRUPTCY ¶ 502.03[3][c] (16th ed.); Daniel K. Sklar & Holly J. Kilibarda, *"Legal Rate" of Post-Petition Interest for Unsecured Creditors In A Chapter 11 Case*, 29-Oct. AM. BANKR. INST. J. 32 (2010); Elkin, 042805 AM. BANKR. INST. 15 at § IV. Given the absence of controlling precedent, the Bankruptcy Court relied on the Ninth Circuit's decision in *Cardelucci* to ascertain the meaning of the phrase "interest at the legal rate." 285 F.3d at 1234.

In *Cardelucci*, which involved a surplus Chapter 11 bankruptcy estate, the Ninth Circuit interpreted section 726(a)(5) to require the payment of interest to unsecured creditors at the Federal Judgment Rate. The Ninth Circuit provided four primary justifications for its holding. First, the court observed that "Congress specifically chose the language 'interest at the legal rate,' [to] replac[e] the originally proposed language 'interest on claims allowed.'" *Cardelucci*, 285 F.3d at 1234 (citing Report of the Commission on the Bankruptcy Laws of the United States, H.R. Doc. No. 93–137, § 4–405(a)(8), (1st Sess. 1973), reprinted in B-4c COLLIER ON

---

[4] The only decision from within this Circuit to have considered the issue is *In re Sapp*, 2003 Bankr. LEXIS 2174, at *13-15 (Bankr. S.D. Ind. Mar. 4, 2003). In *Sapp*, the Bankruptcy Court adopted the Ninth Circuit's reasoning from *In re Cardelucci*, 285 F.3d 1231, 1234 (9th Cir. 2002), which the Court discusses next.

BANKRUPTCY APP. Pt. 4(c)). In other words, "instead of a general statement allowing for awards of interest, Congress modified what type and amount of interest could be awarded with the specific phrasing 'at the legal rate.'" *Id.* According to the Ninth Circuit, this "indicates that Congress meant for a single source to be used to calculate post-petition interest" and did not intend for the meaning of "the legal rate" to "shift depending on the interests invoked by the specific factual circumstances before the Court." *Id.* at 1236. Second, the Ninth Circuit explained that its reading of section 726(a)(5) was consistent with the general rule that "an award of post-judgment interest is procedural in nature and thereby dictated by federal law." *Cardelucci*, 285 F.3d at 1235. Third, the Ninth Circuit found that "applying a single, easily determined interest rate"—the Federal Judgment Rate—"to all claims for post-petition interest ensures equitable treatment of creditors," because "no single creditor will be eligible for a disproportionate share of any remaining assets to the detriment of other unsecured creditors." *Id.* at 1235-36. Finally, the Ninth Circuit explained that by applying the Federal Judgment Rate, bankruptcy trustees will not be faced with the potentially "overwhelm[ing]" task of "[c]alculating the appropriate rate and amount of interest to be paid to a myriad of investors." *Id.* at 1236.

While *Cardelucci* is well-reasoned, the Court is not convinced that, by using the phrase "at the legal rate" in section 726(a)(5), Congress intended for the Federal Judgment Rate to apply to all unsecured claims for post-petition interest, even when there is a surplus estate. The Supreme Court has recognized that pre-Code practices may "inform[] our understanding of the language of the code." *Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.*, 530 U.S. 1, 10 (2000) (citations omitted). "The normal rule of statutory construction is that if Congress intends for legislation to change the interpretation of a judicially created concept, it makes that

intent specific." *Midlantic Nat'l Bank v. New Jersey Dep't of Envtl. Prot.*, 474 U.S. 494, 501 (1986). The Supreme Court "has followed this rule with particular care in construing the scope of bankruptcy codifications." *Id.* However, pre-Code practices "cannot overcome th[e] language" of the Code. *Hartford Underwriters*, 530 U.S. at 10. "'Where the meaning of the Bankruptcy Code's text is itself clear[,] its operation is unimpeded by contrary * * * prior practice.'" *Id.* (quoting *BFP v. Resolution Trust Corporation,* 511 U.S. 531, 546 (1994)). Ultimately, it is this Court's "obligation to interpret the Code clearly and predictably using well established principles of statutory construction." *RadLAX*, 132 S. Ct. at 2073.

Applying these principles, the Court concludes that it is not clear from the language of section 726(a)(5) that Congress intended to replace the pre-Code rule that in cases involving a surplus bankruptcy estate, the bankruptcy court should "enforce creditors' rights according to the tenor of the contracts that created those rights." *Chicago, Milwaukee*, 791 F.2d at 528. Section 502(b)(2) cannot be read to prohibit the award of post-petition interest in the case of a surplus estate, because section 726(a)(5) creates an exception to the general rule prohibiting the award of unmatured interest. See *Coram*, 315 B.R. at 344 (rejecting argument that under section 502(b)(2), the creditor's allowed claim does not include unmatured interest, and explaining that "[w]hile section 502(b)(2) provides that an allowed claim does not include interest unmatured as of the petition date, it does not prohibit the award of interest to creditors in all circumstances" since section 726(a)(5) authorizes a creditor in a surplus chapter 7 case "to receive, as a fifth priority claim, post-petition interest").

It also is not clear from the language of section 726(a)(5) that Congress intended to replace the pre-Code rule with a mandatory Federal Judgment Rate. See *In re Schoeneberg*, 156 B.R. 963, 969, 972 (Bankr. W.D. Tex. 1993) ("Section 726(a)(5) itself provides no clear answer"

concerning the rate of interest an unsecured creditor is entitled to under the Code). If Congress had intended for "interest at the legal rate" to mean, in all cases, the Federal Judgment Rate, it would have been simple enough for Congress to state its intent clearly—either in the original enactment of the Code or its subsequent amendments. The Plan Proponents have not identified, nor has the Court found, any text or legislative history suggesting that Congress intended to enact a bright-line rule that bankruptcy courts must apply the Federal Judgment Rate in all cases.[5] Additionally, this Court is guided by the Seventh Circuit's explanation in *Fesco Plastics* that section 726(a)(5) codified the pre-Code "solvent debtor" exception to the longstanding federal bankruptcy rule that interest on claims stops accruing when the bankruptcy petition is filed. 996 F.2d at 155-56. This history suggests that Congress did not intend to override the bankruptcy courts' prior practice in the case of solvent bankruptcy estates.

In 1994—sixteen years after the Code was enacted—a Committee report suggested that pre-Code federal bankruptcy law was still relevant to the award of postpetition interest in cases involving a solvent bankruptcy estate. Specifically, the report accompanying the repeal of subsection 1124(3) recognized that claims for postpetition interest must comply with section 1129(a)(7)'s best interest of creditors test and section 1129(b)'s fair and equitable test.[6] First, the Committee explained, if creditors vote for a plan of reorganization, "it can be confirmed over the vote of dissenting individual creditors only if it complies with the 'best interests of creditors' test under section 1129(a)(7) of the Bankruptcy Code." Committee Report, 1994 U.S.C.C.A.N. at 3357. Second, "[i]f creditors vote for the plan of reorganization, it can be confirmed over the

---

[5] See *Coram*, 315 B.R.at 346 ("Section 726(a)(5) provides that a creditor must receive post-petition 'interest at the legal rate.' However, neither the Code nor its legislative history provides a definition of what that interest rate is.").

[6] *Cardelucci* only considered the plan's compliance with section 1129(a)(7).

vote of dissenting class of creditors only if it complies with the 'fair and equitable' test under section 1129(b)(2) of the Bankruptcy Code." *Id.*

According to the Committee, "[t]he words 'fair and equitable' are terms of art that have a well established meaning under the case law of the Bankruptcy Act as well as under the Bankruptcy Code." *Id.* "Specifically, courts have held that where an estate is solvent, in order for a plan to be fair and equitable, unsecured and undersecured creditors' claims must be paid in full, including postpetition interest, before equity holders may participate in any recovery." *Id.* at 3357 and n.15. The Committee then cited pre-Code case law—rather than the Federal Judgment Rate—for the "well established" meaning of "fair and equitable" in the context of a solvent bankruptcy estate. *Id.* at 3357 n.15 (citing *Consolidated Rock Products Co. v. Dubois*, 312 U.S. 510, 527 (1941) (in corporate reorganization proceeding, accrued interest on bonds is entitled to the same priority as the principal and a reorganization plan which makes no provision for the accrued interest on the bonds violates the absolute priority rule), and *Debentureholders Protective Committee of Continental Inv. Corp.*, 679 F.2d 264 (1st Cir. 1982), and cases cited therein).

In *Debentureholders*, one of the cases cited by the Committee, the First Circuit outlined pre-Code law concerning the award of postpetition interest in the case of a surplus bankruptcy estate. 679 F.2d at 268. The First Circuit explained that "[p]ost-petition interest questions arise in two different situations." *Id.* First, "[i]f there is a contract between the creditor and the bankrupt either for interest on the principal or for interest on unpaid interest on the principal, and if this is a valid contract under the law of the State which governs the contract, then the federal bankruptcy law determines whether the contract is enforceable in bankruptcy." *Id.* (citing *Vanston*, 329 U.S. at 161). Second, "[i]f the creditor and the bankrupt have not made a valid

contract as to interest, nonetheless, the bankruptcy court has the power to award interest on the theory that there has been a detention by the bankruptcy court of monies due." *Id.* However, "the bankruptcy court usually does not make such awards unless the alleged bankrupt is solvent." *Id.*

The First Circuit determined that the trustee's plan of reorganization was not fair and equitable and should not have been confirmed, because the plan did not provide for the holders of convertible debentures[7] to be paid interest at the contractual rate. The court explained:

> If [the debtor] were insolvent, the indenture provision allowing the post-petition interest on the instalments which fell due either before or after the petition was filed would not be enforceable, regardless of State law. The federal bankruptcy rule, derived from English law, provides that in the case of insolvent debtors interest, whether stipulated in a contract or not, stops at the moment the petition in bankruptcy is filed. Two reasons are given for the rule: (1) interest payments are penalties or damages assessed against the debtor for his detention of the creditor's money and therefore it would be unjust to allow the creditor to recover such penalties or damages from other creditors who were not to blame for the detention; and (2) the bankruptcy court itself, not the debtor, detained the money after the petition was filed.

> But with respect to post-petition interest on both the unpaid instalments which fell due before, and the unpaid instalments which fell due after, the petition, the legal situation is different when the supposed bankrupt proves to be solvent. *Where the debtor is solvent, the bankruptcy rule is that where there is a contractual provision, valid under state law, providing for interest on unpaid instalments of interest, the bankruptcy court will enforce the contractual provision with respect to both instalments due before and instalments due after the petition was filed.* This rule is fair and equitable inasmuch as the solvent debtor's estate will have been enriched by the bankruptcy trustee's use of money which the debtor had promised to pay promptly to the creditor, and, correspondingly, the creditor will have been deprived of the opportunity to use the money to his advantage. Moreover, the rule does not in any way affect any creditor other than the claimant of interest on interest. Finally, the rule is in harmony with the settled English and American law that when an alleged bankrupt is proved solvent, the creditors are entitled to receive post-petition interest before any surplus reverts to the debtor.

*Id.* at 268-69 (citations omitted; emphasis added).

---

[7] A debenture is "[a] debt secured only by the debtor's earning power, not by a lien on any specific asset." Black's Law Dictionary (10th ed. 2014). A convertible debenture is "[a] debenture that the holder may change or convert into some other security, such as stock." *Id.*

In its pre-Code decisions, the Seventh Circuit recognized the same rule for awarding prepetition interest when the debtor is solvent. In *Chicago, Milwaukee*, the Seventh Circuit acknowledged the "venerable principle that a bankruptcy court can refuse to award interest that accrues on a creditor's claim after the petition for bankruptcy is filed." 791 F.2d at 529. But, the court explained, that principle "is designed for cases where there is not enough money to pay all the creditors—so that there is a question whether one creditor should get interest while another doesn't even recover principal—and not for cases like this, where the debtor is solvent." *Id.* "[I]f the bankrupt is solvent the task for the bankruptcy court is simply to enforce creditors' rights according to the tenor of the contracts that created those rights." *Id.* at 528. Applying this rule, the Seventh Circuit determined that the creditors (debenture holders) were entitled to 5% contractual interest, and not in excess of 5% as they requested, because "[t]he contract is the measure of their rights." *Id.* at 528-29.

This Court also is guided by the Seventh Circuit's treatment of postpetition interest awarded to oversecured creditors under section 506(b) of the Code. Section 506(b) provides that, "[t]o the extent that an allowed secured claim is secured by property the value of which * * * is greater than the amount of such claim, there shall be allowed to the holder of such claim, *interest on such claim*, and any reasonable fees, costs, or charges provided for under the agreement or State statute under which such claim arose." 11 U.S.C. § 506(b) (emphasis added).

In *In re Terry Ltd. P'ship*, 27 F.3d 241, 241-43 (7th Cir. 1994), the Seventh Circuit looked to section 506(b) in applying a presumption that interest should be awarded at the contract rate where there is a contract providing for interest. The Seventh Circuit acknowledged the Supreme Court's holding in *Ron Pair*, 489 U.S. at 242, that the award of interest under section 506(b) is not dictated by the underlying loan agreement, because the statutory language

"provided for under the agreement" modifies "fees, costs, and charges" and not "interest on such claim." *Terry*, 27 F.3d at 243.[8] *Ron Pair* did not "elaborate, however, as to how the interest rate in the agreement should be treated." *Id.* According to the Seventh Circuit, "[b]ankruptcy courts have construed *Ron Pair* to require analyzing default rates based on the facts and equities specific to each case." *Id.* But "[t]his does not render the contracted-for default rate irrelevant." *Id.* "'[D]espite its equity pedigree, [bankruptcy] is a procedure for enforcing pre-bankruptcy entitlements under specified terms and conditions rather than a flight of redistributive fancy.'" *Id.* (quoting *In re Lapiana*, 909 F.2d 221, 223 (7th Cir. 1990)). "Creditors have a right to bargained-for post-petition interest" and "bankruptcy judges are not empowered to dissolve rights in the name of equity." *Id.* Thus, the Seventh Circuit held, "[w]hat emerges from the post-*Ron Pair* decisions is a presumption in favor of the contract rate subject to rebuttal based upon equitable considerations." *Id.* In the case of default interest, "[c]ourts have found the presumption to be sufficiently rebutted in cases where the contract rate was significantly higher than the predefault rate without any justification offered for the spread." *Id.* "In cases where courts refused to award interest based on the contractual default rates, it was because those rates could not be justified by demonstrated need or by prevailing industry practice." *Id.* at 244. Applying the case law to the record before it, the Seventh Circuit concluded that the creditor's contract default rate was reasonable and affirmed the bankruptcy court and district court orders awarding postpetition interest at the rate provided in the creditor's agreement. *Id.* at 244-45.

 *Terry* is instructive. Although section 506(b) uses somewhat different language than section 765(a)(5)—"interest on such claim" rather than "interest at the legal rate"—both phrases

---

[8] In *Ron Pair*, the Supreme Court held that section 506(b) authorized payment of postpetition interest on nonconsensual oversecured prepetition claims, even though pre-Code practice was to allow postpetition interest only on consensual oversecured prepetition claims. 489 U.S. at 241-43. The Court found that pre-Code practice could not override the clear language of the Code. *Id.* at 245-46.

are ambiguous on their face. *Terry* looked to common law bankruptcy principles and *Ron Pair* to determine that the contract rate should be enforced unless equitable considerations dictate otherwise. Although the Plan Proponents claim that *Terry* has no application because it construes a different provision of the Code, the Court finds relevant its general principle that contract rights should be enforced in the absence of compelling equitable considerations.

In light of the ambiguous language used in section 726(a)(5), along with the pre- and post-Code case law and the 1994 Committee report discussed above, this Court respectfully disagrees with the Bankruptcy Court's conclusion that "interest at the legal rate" means the Federal Judgment Rate in cases involving a surplus estate. The Court finds it more likely that, by using the phrase "interest at the legal rate," Congress was referring to the interest rate appropriate under federal bankruptcy law. Section 726(a)(5) codified the pre-Code "solvent debtor" exception to the longstanding bankruptcy rule that interest on claims stops accruing when the bankruptcy petition is filed. *Fesco Plastics*, 996 F.2d at 155-56. The pre-Code rule in such cases was that, where the bankruptcy estate was solvent, the bankruptcy court should "enforce creditors' rights according to the tenor of the contracts that created those rights." *Chicago, Milwaukee*, 791 F.2d at 528. Reading "interest at the legal rate" to mean interest at the rate allowed under federal bankruptcy law would be consistent with the general rule that an award of post-judgment interest is procedural in nature and governed by federal law. *Cardelucci*, 285 F.3d at 1235.

Moreover, this reading of the statute would ensure equitable treatment of creditors in cases involving a surplus estate that has enough funds to pay all unsecured creditors' claims, including claims for post-petition interest. Where there is a surplus, the bankruptcy court has no apparent reason to be concerned about creditors receiving a "disproportionate share of any

remaining assets." *Cardelucci*, 285 F.3d at 1235. The bankruptcy court is not dividing a too-small pie amongst competing creditors, because there is enough pie available to give each creditor the benefit of the agreement he made with the debtor prior to the bankruptcy. Additionally, awarding the Federal Judgment Rate, by default, over an applicable contract rate could create perverse incentives as the Federal Judgment Rate currently is so low that debtors with sufficient funds may nevertheless decide to file for Chapter 11 reorganization to escape their obligations to pay interest at rates that are unfavorable in comparison to the Federal Judgment Rate. Finally, as discussed in greater detail below, it seems fundamentally unfair to require a creditor to accept a lower interest rate than he bargained for when the bankruptcy estate has enough money to pay all unsecured creditors' claims, including interest, in full.

For these reasons, the Court concludes that, in the case of a Chapter 11 surplus bankruptcy estate that is large enough to pay in full all unsecured creditors' claims plus postpetition interest, section 726(a)(5) does not limit a creditor with a valid contract to the Federal Judgment Rate. If the unsecured creditor's contract provides for the payment of interest, there is a presumption that the creditor is entitled to the contractual amount. This presumption may be rebutted by equitable considerations.

**D.    Best Interest of Creditors Test, section 1129(a)(7)**

The Court now turns to the best interest of creditors test codified in section 1129(a)(7) of the Code. Under the test, "[a]ll claimants in a class of claims that is impaired under the proposed [Chapter 11] plan must be accorded treatment under the plan at least as good as treatment they would receive upon the liquidation of the debtor under Chapter 7." *Sentinel*, 398 B.R. at 310. If this were a Chapter 7 proceeding, then Creditor would be entitled under section 726(a)(5) to "interest at the legal rate" once all superior classes of claims are paid. 11 U.S.C. § 726(a)(5).

This leads to the question of what "interest at the legal rate" means in Chapter 7 proceedings. The Court sees no reason why its foregoing analysis of this phrase should not also apply in Chapter 7 cases in the rare instance where there is a true surplus, with enough money to pay all unsecured creditors their full claims plus interest before distributing the remainder to the debtor. Under the Court's reading of section 726(a)(5), Creditor would be entitled to interest at the same rate in a Chapter 7 case, which satisfies the best interest of creditors test.[9]

> ### E. Whether the Bankruptcy Court Erred By Confirming The Plan Because It Proposes to Disallow Late-Filed Claims for Distribution Purposes

The final issue in this appeal is whether the Bankruptcy Court erred in approving Section 6.4 of the Plan, which provides: "Subject to Bankruptcy Code section 502(j) and Bankruptcy Rules 3008 and 9006, any Claim for which the filing of a Proof of Claim, application or motion with the Bankruptcy Court is required under the terms of the Bankruptcy Code, the Bankruptcy Rules, any order of the Bankruptcy Court (including one providing for a Bar Date) or the Amended Joint Plan will be disallowed for distribution purposes if and to the extent that such Proof of Claim (or other filing) is not timely and properly made." [14-1] at 17. The Bankruptcy Court overruled Creditor's objection to Section 6.4 for three reasons, including that "such objection is premature in that the Trustee has not, to date, relied on [Section] 6.4 as a basis for the Estate's objections to [Creditor's] proof of claim (Claim 14-1) or amended proof of claim (Claim No. 14-2)." [1-3] at 3.

On appeal, Creditor argues that the Bankruptcy Court's approval of Section 6.4 of the Plan violates the best interests of creditors test, the fair and equitable test, and other provisions of the Code. The Plan Proponents disagree on the merits and also assert that Creditor lacks

---

[9] The Court finds it unnecessary to reach Creditor's argument that the Plan violates the "fair and equitable" test contained in 11 U.S.C. § 1129(b).

standing to appeal this issue because the Plan Proponents did not object to and the Bankruptcy Court did not disallow Creditor's Amended Proof of Claim on the ground that it was untimely.

The Court concludes that, regardless of Creditor's standing, it would be premature to address Creditor's challenges to Section 6.4 because the Bankruptcy Court has made no findings as to the timeliness of Creditor's claims under that provision. The Court has authority to remand to the bankruptcy court to clarify and make additional factual findings where appropriate. See, e.g., *In re Sentinel Mgmt. Grp., Inc.*, 728 F.3d 660 (7th Cir. 2013) (remand was required for district court to clarify internally inconsistent factual findings); *City of Milwaukee v. Gillespie*, 487 B.R. 916 (E.D. Wis. 2013) (absence of a determination by the bankruptcy court of the reasonably equivalent values of Chapter 13 debtors' properties warranted remand of debtors' fraudulent transfer avoidance proceedings). Remand is the appropriate course here. If the Bankruptcy Court concludes that Creditor's Amended Proof of Claim was timely filed, that will resolve the issue. If the Bankruptcy Court concludes that Creditor's Amended Proof of claim was untimely, then remand will give the Bankruptcy Court the opportunity to address, in the first instance, Creditor's arguments concerning why its Amended Proof of Claim nonetheless should be allowed.

## IV. Conclusion

For the reasons set forth below, the Bankruptcy Court's decision is reversed in part and the case is remanded to the Bankruptcy Court to: (1) determine the appropriate rate of postpetition interest to award Creditor in light of this opinion, Creditor's contracts, and any relevant equitable considerations; (2) determine whether Creditor's amended proof of claim is timely under Section 6.4 of the Plan and, if it is not, address Creditor's arguments concerning why its amended proof of claim should nonetheless be accepted; and (3) make a distribution of

funds in the appropriate amount to Creditor.  Finally, the parties are requested to file on the docket in Case No. 15-cv-10512 (the related appeal) no later than April 15, 2016 a statement of position in regard to whether that appeal is moot in light of this opinion.

Dated: March 29, 2016

_____
Robert M. Dow, Jr.
United States District Judge